0101-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/23/2015 3:38:33 PM
Accepted 7/23/2015 3:55:38 PM
ABEL ACOSTA
CLERK

PD-0100 & PD-0101-15

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

OSMIN PERAZA,
*Appellant*
**v.**
THE STATE OF TEXAS
*Appellee*

Arising from the First Court of Appeals in
Nos. 01-12-00690-CR & 01-12-00691-CR.
Cause Numbers 1305439 & 1305438
from the 184th District Court of Harris County, Texas

## APPELLANT'S MOTION FOR REHEARING

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, the Appellant, by and through his undersigned attorney, and respectfully moves the Court to reconsider its July 1, 2015, decision for the following reasons:

1.  The discussion by the Court of how a facial challenge to a statute is considered on appeal has subtly altered current precedent from the United States Supreme Court and this Court.

2.  The decision of the Court crafting a broad new rule to define court costs has created new constitutional issues violating double jeopardy and equal protection.

-1-

Discussion

**Issue One:**

**The standard for a facial challenge has been altered.**

Here, the Court's restatement of a legal principle almost imperceptibly deviates from the principle as originally formulated in precedential case law. This uncalculated divergence may well have affected the Court's ultimate conclusion. Accordingly. Mr. Peraza respectfully importunes this honorable Court to carefully consider the prospect that a guiding legal principle has been incorrectly stated.

**The burden of a party alleging that a statute is facially unconstitutional**

The legal principle in question concerns the legal burden borne by a party alleging a statute to be facially unconstitutional. This Court begins with a correct statement of the law. "In order to successfully mount a facial challenge to Article 102.020, Peraza must establish that no set of circumstances exists under which that statute would be valid." *Peraza v. State*, No. PD-0100-15 & No. PD-0101-15, ___ S.W.3d ___ (Tex. Crim. App. July 1, 2015) at 9. The language is identical to that set out in the United States Supreme Court case cited by the Court. *United States v. Salerno*, 481 U.S. 739, 745 (1987) (party making a facial challenge to a statute "must establish that no set of circumstances exists under which the Act would be valid"). The language is also the same as that describing a challenger's burden as declared in the two CCA cases cited as authority. *See*

*Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("the challenger must establish that no set of circumstances exists under which the statute will be valid."); *see also State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) (repeating the language from the *Santikos* case verbatim).

But one page later, the Court characterizes Mr. Peraza's burden differently:

> We must determine whether there are potential constitutional applications of Article 102.020 so that we can consider whether Peraza has met his burden to show that there are no possible constitutional applications of the statute.

*Peraza* at 10. No cases are cited for this precise phraseology.

At first glance, the two formulations of the burden seem to be the same. Here again are the two different formulations:

**Original Formulation**: The challenger must establish that "no set of circumstances exists under which the statute would be valid."

**Altered Formulation**: The challenger must establish that "there are no possible constitutional applications of the statute."

In the case of most statutes, the challenger's burden is the same under either formulation. But in the case of some statutes, the challenger's burden is improperly escalated under the altered formulation. The statutes in which the burden is erroneously heightened are those statutes that produce both constitutional and unconstitutional results at the same time. Statutes calling for the assessment of fees and costs are prime

examples.

**The former family protection fee - partly constitutional and partly not**

Ten years ago, the Attorney General considered the constitutionality of Section 51.961 of the Government Code. *See Tex. Att'y Gen. Op. No. GA-0387* (2005). This statute authorized county commissioners courts to adopt a "family protection fee" in an amount not to exceed $30. *See* Act of June 2, 2003, 78th Leg., ch. 198, 2003 Tex. Gen. Laws 711 (amended 2005 and 2007) (current version at TEX. GOV'T CODE ANN. § 51.961 West 2013). The fee was to be collected upon the filing of a suit for the dissolution of marriage. *Id.* Revenue from the fee was to be directed to two different destinations. *Id.* Subsection (d) commanded that one-half of the fee be deposited in the county's family protection account. *Id.* Subsection (g) mandated that the other half of the fee go to the State's child abuse and neglect prevention trust fund account. *Id.*

The AG opined that Subsection (g)'s allocation of revenue to the State's child abuse and neglect prevention trust fund account was unconstitutional. *Tex. Att'y Gen. Op. No. GA-0387* (2005) at 5. According to the AG, directing revenue to the trust fund violated the open courts provision of the Texas Constitution. *Id.* But the AG reiterated a previous opinion that Subsection (d)'s allocation of revenue to the county's family protection account was constitutional. *Id.* at 6-7. The salient message here is not the reasoning for the AG's opinion that one fee destination was constitutional while the other fee destination was not. Rather, the reason for citing this AG opinion is to show

-4-

that certain statutes can have both constitutional and unconstitutional aspects.

**A statute that is unconstitutional in part is an unconstitutional statute**.

A statute can have both constitutional and unconstitutional aspects - every time the statute is applied. When is a fee statute applied? Every time the fee is assessed.

When a statute has unconstitutional aspects, the statute itself is unconstitutional. The statute cannot continue to exist unchanged. The unconstitutional portion of the statute must be excised from the rest of the statute. In some circumstances, the remaining portion of the statute can continue in effect. In other situations, the excision of the invalid portion of the statute makes this impossible. *See* TEX. GOV'T CODE ANN. § 311.032(C) (West 2005) ("[I]f any provision of the statute or its application to any person is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.").

In the case of Section 51.961, the statute could not continue to stand - even with the offending provision severed out. In order to keep the constitutional portion of the statute in effect, the Legislature had to amend the statute. The Legislature did so in the very next legislative session. *See* Act of May 22, 2007, 80th Leg. R.S., ch. 637, 2007 Tex. Gen. Laws 1212, 1215. The amendment reduced the fee from $30 to $15. The amendment directed the $15 fee to the county's family protection account which the AG had found to be constitutional. Additionally, the amendment repealed Subsection (g)

which had directed part of the prior $30 fee to the State's child abuse and neglect prevention trust fund.

As noted in the foregoing paragraph, when a portion of a statute is unconstitutional, the statute itself is unconstitutional. Under the original formulation of the burden the challenger to the facial constitutionality bears, a partially unconstitutional statute will always be found to be unconstitutional. But under the altered formulation of the burden, a partially unconstitutional statute will always be found to be constitutional. This point can best be demonstrated via a hypothetical example.

**Bananas and apples: a hypothetical example to aid understanding**

Consider a hypothetical fee statute that has both constitutional and unconstitutional aspects every time the statute is applied. This hypothetical statute is just like former Section 51.961 of the Government Code discussed above. Mr. Peraza uses the hypothetical statute instead of Section 51.961 in order to make his point easier to understand.

Imagine a constitutional provision prohibiting the expenditure of criminal court cost revenue on bananas. There are no similar constitutional provisions prohibiting the use of criminal court cost revenue on other types of fruit. Imagine also that the legislature passes a statute requiring the imposition of a $10 court cost upon conviction of a crime. Revenue from the court cost is statutorily directed to a fund used to purchase apples and bananas. The expenditure of the court cost revenue on apples is

-6-

constitutional because no constitutional provision prohibits such an expenditure. But the purchase of bananas with the court cost revenue is unconstitutional because of the constitutional provision prohibiting expenditures for bananas. Thus, the statute has both constitutional and unconstitutional aspects - every time the fee is assessed. How would a facial challenge to the statute's constitutionality fare? The answer depends on which of the two formulations of the challenger's burden is employed.

Let's consider the original formulation - the formulation set out in *Salerno*, *Santikos*, and *Rosseau*. The challenger would have to establish that "no set of circumstances exists under which the statute would be valid." This is actually quite easy to establish. The statute permits every $10 criminal court cost to be spent on bananas. Thus, every $10 court cost may be spent unconstitutionally. There is therefore no set of circumstances under which the statute's intended use of the funds is not at least partly for bananas. This being the case, the challenger meets his burden. The statute is unconstitutional.

Next, let's consider the altered formulation. The challenger would have to show that there are "no possible constitutional applications of the statute." This the challenger cannot do. Every $10 court cost may be spent on apples. Expenditures on apples are perfectly constitutional. This being the case, the challenger does not meet his burden. The statute is constitutional.

The original formulation and the altered formulation produce different results. The fact that the two formulations of the challenger's burden yield contrary results

shows that the two formulations are not the same.

**Which formulation is correct?**

The original formulation comes straight from the United States Supreme Court (*Salerno*) and from the prior opinions of this Court (*Santikos* and *Rosseau*). The altered formulation is just that - an altered version of the original formulation. The original formulation is the correct formulation based on precedent. And if the original formulation is the correct formulation, then the result under the original formulation is the correct result. The hypothetical statute is unconstitutional. Correspondingly, the altered formulation is an incorrect formulation that reaches an incorrect result. Under the altered formulation, the hypothetical statute with both constitutional and unconstitutional aspects in every application is found to be constitutional. This is wrong.

The two formulations are not equivalent. The fact that there is a constitutional aspect to a statute (e.g., buying apples) does not mean there is a set of circumstances under which the statute is constitutionally valid. The two formulations produce different results. A court's use of the altered formulation essentially means that the court is employing an incorrect framework to analyze the facial constitutionality of a statute.

**This court used the altered formulation to analyze section article 102.020**

As noted earlier, this Court began its analysis correctly by citing the original formulation of the challenger's burden as announced in *Salerno*, *Santikos*, and *Rosseau*. But then the Court took a different turn, so to speak, and pronounced an altered version of

the challenger's burden. Having made this wrong turn, the Court employed the altered formulation throughout the rest of its opinion and never got back on the right track.

On page 12 of the opinion, this Court makes the following declaration:

> To determine whether a statute always operates unconstitutionally in all possible circumstances, we must look to see if there are potential applications of the statute that are constitutionally valid. In this case, we must examine whether the allocation of court costs assessed pursuant to Article 102.020 allows for constitutionally valid expenditures.

With all due respect, this declaration is incorrect. "Constitutionally valid expenditures" are the wrong things for which to search. Consider an equivalent search in our bananas-and-apples example. Such a search would indeed find a constitutionally valid expenditure - an expenditure on apples. But the fact that a statute allows for a constitutionally-valid expenditure does not equate to a constitutional application of the statute. Indeed, along with every statutorily-authorized expenditure on apples there is an unconstitutional statutorily-authorized expenditure on bananas. The hypothetical statute still operates unconstitutionally - even when there is a constitutionally valid expenditure.

But having made the above-quoted declaration, this Court moved on in search of constitutionally-valid expenditures under Article 102.020. The Court found one. Specifically, this Court found that some of the revenue from the DNA record fee is statutorily authorized to fund DNA-related expenses. *See Peraza* at 17-18. Mr. Peraza agrees that under this Court's new definition (court costs are constitutional if expended

-9-

for criminal justice purposes), DNA-related expenditures are constitutionally valid. But Mr. Peraza disagrees with this Court's conclusion based on this finding.

Upon finding that Article 102.020 authorizes a constitutionally-valid expenditure, the Court concluded that there is a constitutional application of the statute. *Id.* at 19 ("Because a portion of the DNA record fee collected is deposited into the criminal justice planning account, and the criminal justice planning account is statutorily required to reimburse monies spent collecting DNA specimens from offenders charged with certain offenses (including aggravated sexual assault of a child under 14), we hold that the statute allows for constitutionally permitted applications."). The Court then declared that this meant Mr. Peraza had "not established that Article 102.020 operates unconstitutionally in all circumstances." *Id.*

The Court essentially found the equivalent of an authorized expenditure on apples under our hypothetical statute. And on the strength of this finding, the Court declared that this meant the statute had a constitutional application. According to the Court, Mr. Peraza had failed to carry his burden to show there are no possible constitutional applications of the statute. Of course, the burden the Court said Mr. Peraza failed to meet is the erroneous, altered formulation of a challenger's burden.

Had this burden been employed by the attorney general in analyzing Section 51.961, that statute would not have been found to be unconstitutional. The Legislature would have had no need to amend the statute.

Under the original formulation of the burden, the result would be different. As mentioned earlier, the fact that a statute allows for a constitutionally-valid expenditure does not mean the statute can be constitutionally applied. Every time the statute is applied (i.e., every time a convicted defendant pays the DNA record fee) the revenue may be used on unconstitutional expenditures. To put things in the terms of our hypothetical example, every DNA record fee may be spent on bananas. This is unconstitutional.

This Court's opinion seems to miss the significance of a very important fact. That fact is that at the same time Article 102.020 authorizes a constitutionally-valid expenditure, the statute also authorizes unconstitutional expenditures. This Court declared on page 18 of the opinion that this was not a problem at all:

> The First Court insisted that, even if DPS were reimbursed for DNA-related expenditures, the fee is nevertheless unconstitutional because the criminal justice planning account funds other projects that are not related to managing the statewide criminal DNA database. However, if we were to follow this analysis, it would be enough for a party bringing a facial constitutional challenge to show that some possible applications of a statute are unconstitutional in order to justify invalidating every application of that statute.

Respectfully, this statement is wrong. It is inconsistent with the original formulation of a challenger''s burden. Under the original formulation, of course, the challenger must show that no set of circumstances exists in which the statute would be valid. Here, Mr. Peraza has shown not only that some applications of Article 102.020

-11-

are unconstitutional, but that every application of the statute is unconstitutional. This is because every time the fee is charged, the revenue may be spent on projects unrelated to the managing the statewide criminal DNA database. These projects arguably don't meet this Court's new test for constitutional court costs. The Court actually did not analyze the constitutionality of these other authorized expenditures. This was because the Court, having found a constitutionally-valid expenditure, found its job to have been completed. In other words, having found a constitutionally-valid expenditure on apples, the Court found no need to examine the expenditures authorized for bananas.

The Court's evaluation of statutes with simultaneous constitutional and unconstitutional aspects is flawed. Under the original formulation of a challenger's burden, such statutes are unconstitutional. Only by applying the mistaken, altered formulation of the burden does the Court find that Article 102.020 does not contravene the Constitution. The Court's innocent reformulation of a challenger's burden has led to this result. Rehearing should be granted.

**Issue Two:**

**The decision of the Court crafting a broad new rule to define court costs has created a new constitutional equal protection problem and double jeopardy issue.**

In *Peraza,* this Court overruled *Carson* and fundamentally altered the definition of court costs from the last five years of precedent. *See Peraza* at 10, 14-15. But there is another twist of definitions in the court's opinion. In one paragraph the Court holds:

"We continue to hold, as we did in *Weir*, that court costs should be related to the recoupment of **costs of judicial resources**. *Peraza* at 14. The Court then states on the next page, "We hold that, if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for **legitimate criminal justice purposes**, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause." *Peraza* at 15.

Assuming that the Court's second pronounced holding is the new definition, there arises serious constitutional issues that were unforseen on original submission.

**If the sum paid upon conviction is to support "reasonable criminal justice purposes," it is no longer a court cost but a punishment.**

Felons convicted of numerous "sex" crimes pay a $250 fee for reasonable criminal justice purposes. TEX. CODE CRIM. PROC. ART. 102.020(a)(1). Misdemeanants convicted of numerous "sex" crimes pay $50. TEX. CODE CRIM. PROC. ART. 102.020(a)(2). And if the defendant is placed on probation, the fee is $34. TEX. CODE CRIM. PROC. ART. 102.020(a)(3). These stacked fees increase according to the seriousness of the offense and remarkably resemble the punishment scale for those convicted of various crimes. Felons do more time than a person convicted of a misdemeanor or someone placed on probation.

The Fifth Amendment to the United States Constitution provides: "nor shall any

-13-

person be subject for the same offense to be twice placed in jeopardy of life or limb...."
U.S. CONST. AMEND. V . Encompassed within the double jeopardy prohibitions is the guarantee of protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, (1969).

By requiring Mr. Peraza to pay for funds expended on "legitimate criminal justice purposes," he is now being punished twice for the same offense.

**The new rule defining court costs as "reasonably related to criminal justice purposes" raises issues under the Equal Protection Clause.** (EPC)

Felons may be a suspect class under Equal Protection Jurisprudence subject to the protections of strict scrutiny. The EPC of the 14th Amendment prohibits any state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. At a minimum, statutory classifications implicating the EPC are subjected to rational basis review - meaning the classification must be rationally related to a legitimate government purpose. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). At the other end of the spectrum, classifications based on race or national origin, and those affecting fundamental rights are subject to strict scrutiny - meaning that the classification must be narrowly tailored to achieve a compelling government purpose. *Id* (internal citations omitted). A court looks to the "traditional indicia of suspectness" to determine if the classification merits strict scrutiny. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). Strict scrutiny is appropriate if the class is "saddled with such disabilities, or

subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Id.*

Convicted felons, especially those convicted of sexual offenses, are subject to the indicia of suspectness. Upon conviction, a felon loses the right to vote, is sent to prison or is subjected to probation, subjected to the opprobrium of society, has limited job opportunities, and faces restrictions as to where he can live. In light of these handicaps, a felon is "relegated to a position of political powerlessness" meriting higher scrutiny. *But see: City of Cleburne v. Cleburne Living Ctr.* 473 U.S. 432, 440 (1985) (Court refuses to recognize the mentally retarded as a suspect class. Reasons that classifications are suspect if there is "no sensible ground for differential treatment"). Because the statute regulates the rights of felons, an arguable suspect classification, it should be subjected to strict scrutiny.

> The statutes establishing the DNA Records Fee are constitutionally invalid under the Equal Protection Clause because they are not narrowly tailored to achieve the compelling government interest of obtaining recoupment for criminal justice purposes.

Operating in concert with TEX. GOV'T CODE § 411.1471, CCP ART. 102.020(h) imposes a $250 court cost for DNA Testing for those defendants convicted of certain felonies and a $50 charge for those convicted of certain misdemeanors. The court's holding that these fees which fund "legitimate criminal justice purposes" is arguably a compelling

government interest for the purpose of strict scrutiny review. However, the statutes creating the mechanism for reimbursement are not narrowly tailored for that purpose. Instead of refunding DPS directly, the statutes present a roundabout reimbursement structure.

**The difference between the DNA Record Fee for Felons and those convicted of misdemeanors is further proof that the purpose of the $250 fee is not narrowly tailored to recoupment.**

There is no evidence that a DNA test costs more for someone convicted of a felony than a misdemeanor. The price DPS pays for testing for both classes is the same, yet a felon pays $250 for his test and the person convicted of a misdemeanor pays $50. There is no discernible reason for the difference in price other than an impermissible punitive purpose or a desire to obtain more revenue for the state. If this isn't enough of an indication of an ulterior motive for the convoluted reimbursement structure, a person placed on community supervision need only pay $34 for DNA Testing; and this fee is credited directly to DPS. The fee structure is not narrowly tailored to reimburse DPS for the cost of testing and fails an Equal Protection strict scrutiny analysis.

**Even if felons are not a suspect class, the DNA Record Fee statutes may still be unconstitutional under the EPC because if they are not rationally related to the legitimate government interest of obtaining recoupment for court costs.**

For the same reasons the DNA Record Fee statutes fail to survive strict scrutiny, they might not survive rational basis review. Rational basis review is a more permissive standard than strict scrutiny; it is used when a court concludes that a statute implicates

-16-

neither a suspect classification nor a fundamental right. *Heller v. Doe*, 509 U.S. 312, 319 (1993). Laws under rational basis review enjoy a "strong presumption of validity" and will not "run afoul of the Equal Protection clause if there is a rational relationship between the disparity of treatment and some government purpose." *Id.* at 319-20.

Classifications can fail rational basis review for two main reasons. First, a classification fails rational basis review if the classification "rests on grounds wholly irrelevant to the state's interest" *Heller*, at 324(citations omitted), or is so attenuated to the asserted goal as to "render the distinction arbitrary or irrational." *Cleburne*, 473 U.S. at 446. Second, a classification fails if its objective is illegitimate or impermissible. *Id.* For example, "a bare desire to harm a politically unpopular group" is not a legitimate state interest. *Id.* at 447. In other words, a statute with an evidently invidious purpose will not stand even if strict scrutiny is not invoked. *Id.*

A statute with an invidious purpose, or created with a bare desire to harm will be struck down under rational basis review. In *Cleburne*, the Court invalidated a city zoning ordinance requiring a special use permit for the establishment of a group home for the mentally retarded, after the city had denied a permit. *Cleburne.* 473 U.S. at 435. The Court held that the mentally retarded were not a suspect class under the 14th Amendment even though the class was often the subject of discrimination and "deep-seated prejudice." *Id.* at 438. Nonetheless, the Court found that the zoning ordinance was invalidated by the Equal Protection Clause because it appeared to be

based upon an irrational prejudice about the mentally retarded. *Id.* at 450. In support of this contention, the Court noted that the Cleburne City Council's decision in denying the ordinance was centered upon the negative attitudes of nearby property owners about the home, and fears the elderly harbored for the mentally retarded. *Id.*, at 448. The Court further held that the seemingly legitimate reasons for denial including avoiding concentration of population and congestion of the streets were invalid because the council does not explain why apartment houses, hospitals, and the like could locate in the area without a permit. *Id.* at 450.

Undoubtedly, reasonable court costs levied against a defendant are rationally related to the legitimate state purpose of recouping its losses. However, the DNA Record Fee statute may not survive rational basis review for two reasons.

First, the distinctions created by the statute are not rationally related to the state interest of recoupment. It is impermissible that a felon be forced to pay for criminal justice programs, unrelated to his trial, benefitting the general public. The three tiered pay structure is highly suspect. Rehearing should be granted.

Respectfully submitted,

**Alexander Bunin**
Chief Public Defender
Harris County Texas

*/s/ Jani J. Maselli Wood*

_____
**Jani J. Maselli Wood**
Assistant Public Defender
**Adam Pirtle**
Intern
Harris County Public Defenders Office
1201 Franklin, 13th Floor
Houston Texas 77002
Jani.Maselli@pdo.hctx.net
(713) 368-0016
(713) 368-4322
TBA No. 00791195

CERTIFICATE OF COMPLIANCE WITH RULE 9.4

 I hereby certify that this document complies with the requirements of Tex. R. App. P. 9.4(i) because there are 4500 words in this document, excluding the caption, the signature lines and this certificate, as calculated by the Corel WordPerfect computer program used to prepare it.

*/s/ Jani J. Maselli Wood*

_____

**Jani J. Maselli Wood**
Assistant Public Defender
Harris County Texas

CERTIFICATE OF SERVICE

Pursuant to Tex. R. App. Proc. 9.5, this certifies that on July 23, 2015, a copy of the foregoing was emailed to Lisa McMinn, State Prosecuting Attorney through texfile.com at the following address:

Lisa McMinn
Lisa.McMinn@SPA.texas.gov

*/s/ Jani J. Maselli Wood*

_____

**Jani J. Maselli Wood**
Assistant Public Defender
Harris County Texas